STATE OF NORTH CAROLINA v. BENJAMIN LIPSEY

No. 7225SC289

(Filed 26 April 1972)

1. **Assault and Battery § 14— assault with a deadly weapon — sufficiency of evidence**

   The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of assault with a deadly weapon or other means or force likely to inflict serious injury to another person, where it tended to show that a witness saw defendant jump up and come down with his hands and cut a police officer across the head and shoulder, that as a result of the cutting the officer was in the hospital four days, and that the wounds required fourteen stitches on the officer's head and twenty-four stitches on his back. Former G.S. 14-33(b)(1).

2. **Criminal Law § 159— record on appeal — chronological order**

   The proceedings should be set forth in the record on appeal in the order of time in which they occurred. Court of Appeals Rule 19(a).

3. **Criminal Law § 131— newly discovered evidence — motion for new trial — insufficiency of affidavits**

   Affidavits filed by defendant were insufficient to sustain his motion for a new trial on the ground of newly discovered evidence.

4. **Criminal Law § 131— newly discovered evidence — sufficiency for new trial**

   In order to obtain a new trial on the ground of newly discovered evidence, the movant must negative laches and show that the newly discovered evidence is more than merely cumulative of or contradictory to the evidence adduced at the trial, and that such evidence is competent.

APPEAL by defendant from *Snepp, Judge,* 15 November 1971 Session of Superior Court held in BURKE County.

Defendant was placed on trial upon a charge of the felony of assault with a deadly weapon with intent to kill, inflicting serious injury. G.S. 14-32(a) as it was written prior to the 1971 amendment.

The State's evidence tended to show: On the night of 10 September 1971, defendant was present at a football game being played at Morganton High School. Defendant had been drinking vodka with friends before arriving at the game. The second half of the game was in progress when he arrived and he stood behind the bleachers with two other men. The School Board had requested that everyone be seated during the game,

and several officers of the Morganton Police Department were on duty. Officer Whitesides asked defendant four times to be seated. Officer Prewitt asked defendant to be seated and, when he did not, the officer told him he would have to be seated or leave. Defendant began cursing the officer, stating that he was not going anywhere. Two officers seized defendant and were escorting him from the premises when a crowd gathered to follow the defendant and the officers. The crowd of about forty rushed them, and the officers were knocked loose from defendant. Officer Whitesides undertook to assist in controlling the crowd and restoring order. He was jumped upon and knocked to the ground. Defendant was seen going towards Officer Whitesides and one witness saw "Benjamin Lipsey [the defendant] jump up and come down with his hands and cut him [Officer Whitesides] across the head and across the shoulder. I saw blood on David Whitesides' shirt." As a result of the cutting, Officer Whitesides was in the hospital four days. The wounds required fourteen stitches on his head and twenty-four stitches on his back.

Defendant's evidence tended to show: Defendant and his brother arrived at the game at the start of the second half. Defendant stood with a group to watch the game. The officers told him that he would either have to sit down or leave the game, and he asked them about getting his money back. The officers grabbed him by his arms and "I might have cussed them because they were twisting my arms behind my back." Someone knocked the officers down and they released defendant. Defendant then went and sat with his brother in the stands. Defendant saw Stacey Tom fighting with Officer Whitesides, but he (defendant) did not engage in any fighting with the officer.

The trial judge withdrew the felony charge from consideration by the jury and submitted the case to them only upon the misdemeanor charge of assault with a deadly weapon or other means or force likely to inflict serious injury or serious damage to another person. G.S. 14-33 (b) (1) as it was written prior to the amendment, effective 1 October 1971.

The jury returned a verdict of guilty of the misdemeanor offense as submitted to them. Defendant appealed.

*Attorney General Morgan, by Associate Attorney Baxter, for the State.*

*W. Harold Mitchell for the defendant.*

BROCK, Judge.

[1]  Defendant assigns as error that the trial judge denied his motion for dismissal at the close of the State's evidence and again at the close of all the evidence. These assignments of error are without merit. The State offered the testimony of a witness who saw "Benjamin Lipsey [the defendant] jump up and come down with his hands and cut him [Officer White-sides] across the head and across the shoulder." This testimony coupled with the testimony of the extent of the injury to the officer was clearly sufficient to require submission of the case to the jury upon the question as submitted.

During the morning after the jury rendered its verdict of guilty, counsel for defendant made the following statement to the court: ". . . [L]ast night I was called and was informed that certain witnesses of whom I was not aware of at the time of trial of this case, knows who actually did the cutting of the officer and based on this newly discovered evidence that we be granted a new trial." The trial judge then continued the matter until the next week of the term, and released defendant upon bond, for the stated purpose of giving counsel ample time to secure appropriate affidavits to support the motion for a new trial. The next week defendant's counsel stated in open court that he and defendant had been unable to locate the witnesses.

[2]  The record on appeal in this case is unnecessarily jumbled. Our rules require that proceedings shall be set forth in the order of the time in which they occurred. Rule 19(a). For example, in this record the motions for nonsuit appear after the jury verdict; none of the motions, affidavits, orders, or judgment show the filing dates; an order for continuance dated 29 September 1971, follows a judgment dated 27 November 1971. We have called attention to the difficulty created for the appellate courts by misarrangement of the record on appeal and have pointed out that a simple chronological arrangement in accordance with our rules makes a study of the record on appeal more accurate. In *State v. Harris,* 10 N.C. App. 553, 180 S.E. 2d 29, we outlined the order for arrangement of a record on appeal in criminal cases.

[3, 4] Nevertheless, we have examined the affidavits which appear to have been intended to support defendant's motion for a new trial and find them insufficient. In order to obtain a new trial upon the grounds of newly discovered evidence, "[t]he movant must negative laches and show that the newly discovered evidence is more than merely cumulative of or contradictory to the evidence adduced at the trial, and that such evidence is competent." 3 Strong, N. C. Index 2d, Criminal Law, § 131. "Moreover, a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and its refusal to grant the motion is not reviewable in the absence of abuse of discretion." *State v. Sherron*, 6 N.C. App. 435, 170 S.E. 2d 70. No abuse of discretion is shown.

No error.

Judges HEDRICK and VAUGHN concur.